**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| EVELYN JEAN LINNEBUR, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED TELEPHONE )<br>ASSOCIATION, INC., )<br>)<br>Defendant. ) | Case No. 10-1379-RDR |

**MEMORANDUM AND ORDER**

This matter comes before the Court upon Plaintiff's Motion to Compel (ECF No. 31) and upon Defendant's Motion for Protective Order and to Quash Third-Party Subpoena (ECF No. 33). For the reasons explained below, both motions are granted in part and denied in part.

**I.     Procedural Conference Requirement**

The Federal Rules of Civil Procedure and this district's local rules require a moving party to confer with opposing counsel about the discovery dispute at issue before filing a motion to compel.[1]  The local rules also impose the requirement to confer upon a party moving for a protective order or moving to quash or modify a subpoena.[2]  In this case, the parties have conferred several times and have attached correspondence memorializing their attempts to resolve the disputes at issue.  The Court finds the parties have satisfied the procedural conference requirements.

**II.     Background**

Plaintiff brings this age discrimination action pursuant to the Age Discrimination in

---

[1] *See* Fed. R. Civ. P. 37(a)(1); D. Kan. Rule 37.2.

[2] D. Kan. Rule 37.2.

Employment Act (ADEA), 29 U.S.C. § 621, *et seq.* and the Kansas Age Discrimination

Employment Act (KADEA), K.S.A. 44-111, *et seq.*  Defendant United Telephone Association,

Inc. (UTA) employed Plaintiff for more than thirty-three years.  She was hired as an accountant

in 1975.  In 1993, Plaintiff was promoted to office manager.  That same year, Craig Mock

became the General Manager of UTA.  Plaintiff alleges that on June 22, 2009, Mr. Mock told her

that he wanted her to retire and that she had until September 1, 2009, to do so.  Plaintiff sent Mr.

Mock a letter stating she did not intend to retire and wanted to continue her employment.  UTA

terminated Plaintiff's employment shortly thereafter.  UTA contends Plaintiff was fired for cause

because she failed to notice a significant accounting error made by an employee she oversaw.

UTA also alleges she repeatedly refused help in managing the accounting department and she

gave her granddaughter—also employed by the company—preferential treatment.

　　　　After Plaintiff filed suit, the parties participated in a planning conference during which

time they discussed case management deadlines and other discovery-related issues.  Based on

discussions during this conference, the parties prepared a planning report indicating a

disagreement regarding production of electronically stored information (ESI).  The Court took

up this matter during the scheduling conference and subsequently entered a scheduling order

reflecting, "The parties agree that defendant shall produce hard copies of e-mail in paper format

or on a computer-readable disc."[3]  The scheduling order further states, "Plaintiff reserves the

right to seek production of ESI in its native format."[4]

　　　　Shortly after the scheduling conference, Plaintiff served her First Request for Production

---

[3] Scheduling Order at 5, ECF No. 8.

[4] *Id.*

of Documents, which requested that Defendant produce responsive ESI in its native format.

Defendant did not assert any specific objection to production of ESI in its native format but

nonetheless produced ESI in Adobe Portable Document Format (PDF).[5]  Plaintiff challenged this

production, as well as Defendant's objections to many other discovery requests.[6]  Disputed items

included company organization charts, accounting audits of Plaintiff's former department,

personnel and payroll information for the duration of Plaintiff's employment (including files

maintained by her supervisor), agendas from board meetings, and work performance and payroll

information for Plaintiff herself and other UTA employees.[7]

    While the parties continued to work towards an agreement on many of these issues,[8]

Plaintiff served a subpoena *duces tecum* on Kennedy McKee & Company, LLP, the accounting

firm in possession of some of Defendant's financial records.  The subpoena seeks "all records

regarding United Telephone Association, Inc." for approximately the past five years.[9]  Shortly

before these records were to be produced, Defendant filed a motion for a protective order and to

quash the subpoena.[10]  Despite the parties' efforts, several disputes over document production

requests, interrogatories, and the subpoena have not been resolved.  This Court addresses these

issues below.

    **III.**    **Discussion**

---

[5] Mem. in Supp. of Pl.'s Mot. to Compel at 3, ECF No. 32.

[6] *Id.* at 6.

[7] *See generally* Mem. in Supp. of Pl.'s Mot. to Compel, ECF No. 32.

[8] The Court notes that it extended the time for briefing on this motion while the parties continued to confer.

[9] Subpoena, ECF No. 34-1.

[10] Def.'s Mot. for Protective Order & to Quash Third-Party Subpoena, ECF No. 33.

Because of issues common to multiple discovery requests, the Court will consider them in five specific categories: first, the request for ESI to be produced native format; second, the relevance of Request Nos. 26 and 27, and Interrogatory Nos. 2, 5 and 6; third, the temporal scope of Request Nos. 7 and 28; fourth, the issue of Defendant's reluctance to certify all responsive documents with respect to Request No. 13 have been furnished; and finally, Defendant's financial documents at issue in Request No. 8 and the third-party subpoena Plaintiff served on Kennedy McKee for auditing records.

A.      *Production of ESI in native format.*

A key issue presented in Plaintiff's Motion to Compel is her request that many electronically stored documents, including organizational charts, e-mail, payroll files, and work performance evaluations, be produced in their native format.[11]  Fed. R. Civ. P. 34(b) allows the party seeking discovery to specify the form in which the responding party should produce the ESI.[12]  However, when ESI is not reasonably accessible because of undue burden or cost, Fed. R. Civ. P. 26(b)(2)(B) provides as follows:

> On motion to compel discovery or for a protective order, *the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost*.  If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause . . . .[13]

Defendant maintains producing many of these documents in PDF format is sufficient and

---

[11] *Id.* at 2-5.

[12] Fed. R. Civ. P. 34(b)(1)(C) (stating that a request for production "may specify the form or forms in which electronically stored information is to be produced"); *see also* ("The amendment to Rule 34(b) permits the requesting party to designate the form or forms it wants electronically stored information produced. . . .  Specification of the desired forms may facilitate the orderly, efficient, and cost-effective discovery of electronically stored information.").

[13] Fed. R. Civ. P. 26(b)(2)(B) (emphasis supplied).

that Plaintiff is charged with explaining why she requires production of the ESI in native format.

Plaintiff, however, has done so: She contends the timing of her termination is a key issue in this

case and the metadata in the requested documents contains vital information about the author,

creation date, and history of each.[14]  She argues this information is central to establishing the

timeline of events that led up to her termination and is not present in the PDFs produced by

Defendant.[15]  Moreover, the plain language of Rule 26(b) imposes the burden on "the party from

whom discovery is sought" to "show the information is not reasonably accessible because of

undue burden or cost."[16]  Defendant makes no such showing.  Accordingly, Plaintiff's motion to

compel is granted with respect to the requested ESI.

Defendant shall produce in native format ESI responsive to Request Nos. 6, 7, 9, 15, and

Bates-stamp-numbered documents A00189-A00191 and A00248.  The parties shall note that—as

explained in further detail below—Request No. 7 is overly broad, and therefore the Court has

limited the scope of the request.

B.      Relevance

Fed.R.Civ.P. 26(b)(1)  provides, "[p]arties may obtain discovery regarding any

nonprivileged matter that is relevant to any party's claim or defense . . . ."[17]  Relevant

information need not be admissible at trial so long as it is reasonably calculated to lead to the

discovery of admissible evidence.[18]  Relevance is broadly construed at the discovery stage of

---

[14] Pl.'s Reply in Supp. of Mot. to Compel at 4, ECF No. 54.

[15] *Id.*

[16] Fed. R. Civ. P. 26(b)(2)(B).

[17] Fed. R. Civ. P. 26(b)(1).

[18] *Id.*

litigation, and a "request for discovery should be considered relevant if there is 'any possibility'

that the information sought may be relevant to the claim or defense of any party."[19]  Therefore,

discovery should ordinarily be allowed "'unless it is clear that the information sought can have

no possible bearing'" on a claim or defense of a party.[20]

There is no presumption in the Federal Rules of Civil Procedure that a discovery request

is relevant.[21]  The proponent of a discovery request must, in the first instance, show the relevance

of the requested information to the claims or defenses in the case.[22]  In many instances, relevance

is apparent on the face of the request because relevance is liberally construed in discovery.[23]

When relevance is not readily apparent, the proponent has the burden of showing the relevance

of the discovery request.[24]

If the requesting party meets its initial burden of demonstrating relevance, the burden

shifts to the party resisting discovery to establish lack of relevance by demonstrating the

requested discovery either (1) does not come within the scope of relevance as defined under Fed.

R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by

discovery would outweigh the ordinary presumption in favor of broad discovery.[25]  Under this

---

[19] *Sheldon v. Vermonty*, 204 F.R.D. 679, 689 (D. Kan. 2001) (quoting *Scott v. Leavenworth Unified Sch. Dist. No. 453*, 190 F.R.D. 583, 585 (D. Kan. 1999)).

[20] *Id.*

[21] *Thompson v. Jiffy Lube Int'l, Inc.*, No. 05-1203-WEB, 2007 WL 608343, at *8 n.20 (D. Kan. Feb. 22, 2007).

[22] *Id.*

[23] *Id.*

[24] *Id.*; *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 259, 309 (D. Kan. 1996).

[25] *Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2004).

standard, the Court will consider the relevance of the information and documents sought in Request Nos. 26 and 27, and Interrogatory Nos. 2, 5, and 6.

*1. Request No. 26*

Plaintiff's Request No. 26 seeks the employment records of Brett Mock, the son of Plaintiff's former supervisor, Craig Mock.[26] Plaintiff contends that because one of Defendant's reasons for firing her was her alleged preferential treatment of her granddaughter, she should be entitled to examine the employment records of another young relative working within the company.[27] Defendant maintains that Brett Mock is not an important individual for Plaintiff's case and that little has been done to prove the relevance of this information beyond the fact that he, like Plaintiff's granddaughter, is a teenager employed by the company.[28]

While relevance in the discovery stage may be broadly defined, courts have generally limited discovery of other employees' personnel files to those of individuals who either participated in or witnessed an act of discrimination against the plaintiff, or those who played some other important role in the plaintiff's case.[29] Moreover, as Defendant notes (and Plaintiff does not disagree), Brett Mock is not similarly situated to Plaintiff's granddaughter.[30] He does not hold the same position and there have been no allegations of preferential treatment towards

---

[26] Mem. in Supp. of Pl.'s Mot. to Compel at 14-15, ECF No. 32.

[27] *Id.*; Pl.'s Reply in Supp. of Mot. to Compel at 10, ECF No. 54.

[28] Def.'s Mem. in [Opp'n] of Mot. to Compel at 10, ECF No. 47.

[29] *Oglesby v. Hy-Vee, Inc.*, No. Civ.A. 04-2440-KHV, 2005 WL 857036, at *2 (D. Kan. Apr. 13, 2005) (holding that the employment information of a similarly-terminated colleague could establish a pattern of discrimination or lead to other discoverable information and was therefore relevant).

[30] Def.'s Mem. in [Opp'n] of Mot. to Compel at 10, ECF No. 47.

him.[31]  In fact, the only similarity between the two teenagers is that they are both relatives of employees at UTA.[32]  Additionally, Plaintiff has not explained precisely how Brett Mock's employment file might show he received preferential treatment.[33]

Though she argues that these files will demonstrate the veracity of her claims, Plaintiff offers no explanation as to how they will do so except to "show how Brett Mock was treated vis-á-vis his peers."[34]  Additionally, there has been no suggestion that he was a witness or participant in the alleged discriminatory termination of Plaintiff's employment, and no indication of his importance beyond the vague argument that it is necessary to determine his treatment at UTA.

The Court finds this request does not seek information that appears facially relevant, and Plaintiff has failed to meet her burden to show the relevance of Brett Mock's personnel files. Accordingly, the motion to compel is denied with respect to Request No. 26.

*2. Request No. 27.*

Request No. 27 concerns documents discussing or referencing Plaintiff's compensation in any form, be it raises, bonuses, or benefits.[35]  In the course of conferring with Plaintiff, Defendant produced bonus schedules from 2001 to 2008, redacting all information other than that pertaining to plaintiff.[36]  In addition to requesting salary increase schedules, Plaintiff now requests all documents be provided without redaction, while Defendant insists the documents

---

[31] *Id.*

[32] *Id.*

[33] Pl.'s Reply in Supp. of Mot. to Compel at 10, ECF No. 54.

[34] *Id.*

[35] Mem. in Supp. of Pl.'s Mot. to Compel at 15-16, ECF No. 32.

[36] Def.'s Mem. in [Opp'n] of Mot. to Compel at 11, ECF No. 47.

provided are sufficient.[37]

Plaintiff argues she requires the compensation-related documents to calculate damages and to understand Mr. Mock's evaluation of her work.[38]  The Court is unable to construct a scenario in which access to information regarding the identities of Plaintiff's former co-workers who received bonuses is relevant to those ends.  Unless she can provide a more concrete factual explanation as to why she requires this information, the Court sees no reason to require Defendant to provide unredacted copies of these documents.  The same is true for extending the temporal scope past what was already provided.

That said, Defendant has failed to provide the salary increase schedule for 2001 to 2008, the same time period for which Defendant previously provided the bonus schedules.[39]  Defendant fails to offer an adequate explanation as to why it cannot produce the salary increase schedule, particularly in light of the fact that it has already produced similar documents.  Therefore, the motion to compel is granted with respect to Request No. 27 to the extent Defendant must produce Plaintiff's salary increase information from at least 2001 to 2008.

*3. Interrogatory No. 2.*

Interrogatory No. 2 seeks information about the author, custodian, and storage location of several specific documents (identified by Bates number).[40]  Plaintiff requests this information as it will allow her to uncover who created and maintained documents that Defendant is utilizing to

---

[37] Pl.'s Reply in Supp. of Mot. to Compel at 12, ECF No. 54; Def.'s Mem. in [Opp'n] of Mot. to Compel at 12, ECF No. 47.

[38] Pl.'s Reply in Supp. of Mot. to Compel at 12, ECF No. 54.

[39] *Id.*

[40] Mem. in Supp. of Pl.'s Mot. to Compel at 16-17, ECF No. 32.

defend itself in this suit.[41]  The Court finds this interrogatory seeks facially relevant information. Defendant sets forth no specific reason why it believes this information is not relevant.[42] Accordingly, Defendant has not satisfied its burden, and the motion to compel is granted with respect to Interrogatory No. 2.

      *4. Interrogatory Nos. 5 & 6.*

      Interrogatory No. 5 asks Defendant to describe all compensation, benefits, and other remuneration Plaintiff received over the years she was employed by Defendant.[43]  Interrogatory No. 6 requests a description of the compensation, bonuses, and other payments Plaintiff would have received had her employment with Defendant not ended in 2009.[44]  Defendant, in its response brief, states that Plaintiff can accurately calculate both her past and future earnings with the information already provided.[45]

      It is true that Fed. R. Civ. P. 33(d) provides that a responding party may answer an interrogatory by "specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could . . . ."[46] However, Defendant originally objected to Interrogatory Nos. 5 and 6 and identified no records whatsoever.  Defendant only now, in response to the motion to compel, attempts to generally

---

[41] Pl.'s Reply in Supp. of Mot. to Compel at 13, ECF No. 54.

[42] Def.'s Mem. in [Opp'n] of Mot. to Compel at 12-13, ECF No. 47.

[43] *Id.* at 13.

[44] Mem. in Supp. of Pl.'s Mot. to Compel at 18, ECF No. 32.

[45] Def.'s Mem. in [Opp'n] of Mot. to Compel at 13, ECF No. 47.

[46] *See also Pulsecard*, 168 F.R.D. at 305 (holding that, in order to properly invoke Rule 33(d), the business records in question must be specifically designated in detail by the responding party so "the burden of deriving the answer from them [is] substantially the same for the party seeking the information.").

identify broad categories of responsive documents it contends will provide Plaintiff with the necessary information.  This is insufficient.  Therefore, the motion to compel is granted with respect to these interrogatories.  Defendant shall supplement its responses.

      C.     *Temporal Scope*

      In addition to challenging the relevance specific requests, Defendant also objects to the temporal scope of several requested discovery items;[47] in certain instances, Plaintiff requests more than ten years of records.[48]  The temporal scope of discovery tends to be broad.[49]  This is especially true in employment discrimination cases, where a plaintiff may have worked in a given position for many years and amassed lengthy employment records.[50]  While it is widely recognized that employment cases do not lend themselves to a "narrowly circumscribed" temporal scope, the scope  is not unlimited.[51]  When a plaintiff requests a specific length of time for temporal scope, she has the burden to explain the reasoning for the request, especially if that request appears arbitrary.[52]  If that burden is met, it shifts to the defendant to explain why the request is overly broad or otherwise cannot be met.[53]  With this in mind, the Court now turns to

---

[47] *See generally* Def.'s Mem. in [Opp'n] of Mot. to Compel, ECF No. 47.

[48] *See* Mem. in Supp. of Pl.'s Mot. to Compel at 15, ECF No. 32.

[49] *See Stoldt v. Centurion Indus., Inc.*, No. 03-2634-CM-DJW, 2005 WL 375667, at *2 (D. Kan. Feb. 5, 2005) (quoting *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir.1995)).

[50] *See, e.g., Collins v. Wal-Mart Stores, Inc.*, No. 06-2466-CW-DJW, 2008 WL 1924935, at *7 (D. Kan. Apr. 30, 2008).

[51] *See Stoldt*, 2005 WL 375667, at *2 (quoting *Gomez*, 50 F.3d at 1520).

[52] *See Apsley v. Boeing Corp.*, No. 05-1368-MLB, 2007 WL 163201, at *3 (D. Kan. Jan. 18, 2007) (holding that, when plaintiff's requested temporal scope stretched back two years before the alleged discriminatory "scheme" began, that scope was overly broad).

[53] *See Johnson*, 238 F.R.D. at 652.

Defendant's objections that Plaintiff's discovery request contains an overly broad temporal scope, specifically referring to Request Nos. 7 and 28.

*1. Request No. 7*

Plaintiff requests documents concerning any changes in personnel, be they actual or proposed, created since Craig Mock was hired by the Defendant in 1993.[54]  Defendant argues that a request for these organizational documents is overly broad, especially in light of Plaintiff's allegation that she was fired as part of Mr. Mock's "five-year plan."[55]  For this reason, Defendant supplied these documents from 2005 through 2009 and no further.[56]  The Court agrees with Defendant's position.  Plaintiff has made repeated references to Mr. Mock's "five-year plan" and statements he allegedly made about retirement shortly before her termination; therefore, documents created during the five-year period leading up to Plaintiff's termination appear relevant.  However, Plaintiff has not set forth an adequate explanation as to the relevance of documents created beyond this more limited temporal scope, particularly those dating back more than a decade.  Therefore, the Court finds that production limited to documents from 2005 through 2009 is sufficient.  However, also at issue is the fact that Defendant's limited production was in PDF, rather than native, format.[57]  As previously stated, Defendant must produce responsive ESI in native format.  The motion to compel is otherwise denied with respect to this request.

---

[54] Mem. in Supp. of Pl.'s Mot. to Compel at 9-10, ECF No. 32.

[55] Def.'s Mem. in [Opp'n] of Mot. to Compel at 3, ECF No. 47.

[56] *Id.*

[57] *Id.* at 5.

*2. Request No. 28.*

Request No. 28 seeks Plaintiff's payroll records for the entire thirty-four-year duration of her employment.[58]  She argues that she needs these records to calculate her damages.[59]  She also states that documents regarding pay raises and bonuses may be indicative of job performance or show how UTA perceived Plaintiff's job performance.[60]  The Court finds these records appear facially relevant.  Defendant's conclusory statements that records from the last eleven years are adequate for Plaintiff to calculate her damages is unpersuasive, particularly in light of the fact that UTA's Controller gave deposition testimony indicating these records are reasonably accessible.   The motion to compel is granted with respect to this request.

D.        *Request No. 13.*

While conferring with Defendant, Plaintiff agreed to limit Request No. 13 to any documents or files about Plaintiff kept by any supervisor or manager at UTA, including Mr. Mock.[61]  While conferring, Defendant has produced some documents in response to this request, but has not certified that all responsive documents have been produced.[62]  Defendant is hesitant to issue such a statement because of the length of Plaintiff's employment and the possibility that other files remain undiscovered.[63]  Plaintiff suggests Defendant's unwillingness indicates that

---

[58] Mem. in Supp. of Pl.'s Mot. to Compel at 15, ECF No. 32.

[59] Pl.'s Reply in Supp. of Mot. to Compel at 11, ECF No. 54.

[60] *Id.*

[61] *Id.* at 8.

[62] *Id.*; Def.'s Mem. in [Opp'n] of Mot. to Compel at 7, ECF No. 47.

[63] Def.'s Mem. in [Opp'n] of Mot. to Compel at 8, ECF No. 47.

responsive documents are being withheld.[64]

　　　　While Defendant does not expressly rely on an overbreadth objection in response to the motion to compel, Defendant does continue to raise concerns over the broad scope of the request.[65]  The Court shares Defendant's view.  However, in its response brief Defendant offers to: "supplement its responses to discovery to indicate that it has, after conducting a reasonable and diligent search of the documents in the custody, possession, or control of UTA, produced '[a]ny documents and files concerning or relating to Ms. Linnebur maintained by Craig Mock or any supervisor or manager.'"[66]  Defendant's proposal is sufficient.  Defendant shall supplement its response to this request to certify that it has conducted a reasonable and diligent search and has produced all responsive documents.

　　　　E.　　Request No. 8 and Defendant's Motion for Protective Order and to Quash Third-Party Subpoena.

　　　　Request No. 8 and Plaintiff's subpoena to Kennedy McKee concern similar documents: accounting audits conducted by Kennedy McKee from 2005 to 2010.[67]  Plaintiff requests these documents because the alleged reason for her termination was a substantial accounting error she failed to discover during the course of her employment.[68]  Defendant argues that while it may be that one or even two of the requested years are relevant to her case, a five-year period is not.[69]

---

[64] Pl.'s Reply in Supp. of Mot. to Compel at 8, ECF No. 54.

[65] *Id.*

[66] Def.'s Mem. in [Opp'n] of Mot. to Compel at 8, ECF No. 47.

[67] Mem. in Supp. of Pl.'s Mot. to Compel at 10, ECF No. 32; Subpoena, ECF No. 34-1.

[68] Pl.'s Reply in Supp. of Mot. to Compel at 7, ECF No. 54.

[69] Def.'s Mem. in [Opp'n] of Mot. to Compel at 4, ECF No. 47.

Plaintiff, however, maintains that a full understanding of Defendant's detection of the error, general accounting practices, and record-keeping methods cannot be achieved without a "before and after" look.[70]

While Defendant's argument that the accounting error took place at one fixed point in time holds some weight, the broad definition of relevance during the discovery period favors Plaintiff.[71]  Plaintiff should be allowed to discover more information about the maintenance, appearance, and treatment of records in five years of audit history rather than simply the one in which the error occurred. The Court finds this information to be facially relevant, and Defendant does not meet its burden to support its objection.  Accordingly, the motion to compel is granted with respect to Request No. 8.

The subpoena served on nonparty Kennedy McKee, however, demands not just the auditing records but rather all documents regarding UTA maintained by the company.[72]  In its Motion for Protective Order and to Quash, Defendant asserts a myriad of objections, including irrelevance, undue burden, and overbreadth.[73]  Plaintiff argues that Defendant has failed to meet its burden for any of these arguments, and therefore, the Court must deny the motion.[74]

Quashing a subpoena is required in a number of instances, including when the subpoena

---

[70] Pl.'s Reply in Supp. of Mot. to Compel at 7, ECF No. 54.

[71] *See Pulsecard*, 168 F.R.D. at 309.

[72] Subpoena, ECF No. 34-1.

[73] Def.'s Mem. in Supp. of Mot. for Protective Order & to Quash Third-Party Subpoena at 4-6, ECF No. 34.

[74] Pl.'s Mem. in Opp'n to Def.'s Mot. for Protective Order & to Quash Third-Party Subpoena at 4-7, ECF No. 46.

imposes an undue burden on the producing party.[75]  Although Rule 45 does not specifically

provide for a relevance or overbreadth objection,  it is well settled "that the scope of discovery

under a subpoena is the same as the scope of discovery under Rule 26(b) and 34."[76]  Therefore,

"the court must examine whether a request contained in a subpoena is overly broad or seeks

irrelevant information under the same standards" as the rules governing discovery requests

served on parties.[77]  Generally, when a subpoena is served on a nonparty, only the nonparty has

standing to challenge it.[78]  However, in the rare case where a party to litigation has a personal

right or privilege to the information requested, that party also has standing to challenge the

subpoena.[79]

        In this instance, the Court finds that Defendant has standing to challenge the subpoena.

The records Plaintiff requests from Kennedy McKee deal specifically with the accounting

history and records of the Defendant.  Because this Court has previously implied a personal right

over these types of financial records strong enough to allow a named party to challenge a

subpoena, this Court will consider the subpoena and Defendant's Motion to Quash.[80]

        Unlike the document production request served on Defendant, the subpoena requests "all

records regarding United Telephone Association, Inc. during the time period of January 1, 2005

---

[75] *See* Fed. R. Civ. P. 45(3)(A). *See also* Fed. R. Civ. P. 45(3)(A)(iii).

[76] *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 662 (D. Kan. 2003) (citing the advisory committee note to the 1970 Amendment of Rule 45(d)(1)).

[77] *Id.*

[78] *Stewart v. Mitchell Transp.*, CIVIL ACTION NO. 01-2546-JWL, 2002 WL 1558210, at *1 (D. Kan. July 8, 2002) (citing *Johnson v. Gmeinder,* 191 F.R.D. 638, 640 n.2 (D. Kan. 2000)).

[79] *Id.* (quoting *Smith v. Midland Brake, Inc.*, 162 F.R.D. 683, 685 (D. Kan.1995)).

[80] *Id.* at *2 (holding that documents including privileged communications and net worth calculations were a "personal right" as imagined by *Smith*).

16

to January 1, 2010."[81]  As stated in the Court's discussion of Request No. 8, the time period of records requested is reasonable.  Additionally, the Court finds that at least some of this information is facially relevant.  The Court does note that while there is some merit in Defendant's argument that the subpoena would burden Kennedy McKee by requiring it to produce duplicative documents, Defendant is not in the best position to determine what would unduly burden a non-party.  Moreover, Defendant does not produce a sufficiently detailed factual basis for its undue burden objection.[82]

The Court does, however, find the document request to be overly broad on its face. Defendant argues, and the Court agrees, that the request for "all records regarding [UTA]" encompasses a broad range of documents beyond the audits in question, potentially including billing statements, communications between the two companies, and other  records that may be outside the scope of discovery.[83]  However, this issue is easily remedied by modifying the subpoena to seek only accounting audits conducted by Kennedy McKee from 2005 to 2010 and any and all correspondence, from 2005 to 2010, that discusses accounting errors.  Accordingly, Defendant's motion is granted in part.  The Court declines to quash the subpoena but instead modifies it as stated above.

Defendant's related request for a protective order is denied.  Fed. R. Civ. P. 26(c)(1) provides that "[t]he court may, for good cause, issue an order to protect a party or person from

---

[81] Subpoena, ECF No. 34-1.

[82] *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D. Kan. 2002) (holding that asserting an objection of undue burden "imposes an obligation to provide sufficient detail and explanation about the nature of the burden in terms of time, money and procedure required to produce the requested documents.").

[83] Def.'s Reply Mem. in Supp. of Mot. for Protective Order & to Quash Third-Party Subpoena at 5, ECF No. 53.

annoyance, embarrassment, oppression, or undue burden or expense . . . ."  To demonstrate good cause, the party seeking a protective order must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[84]  A protective order may only be issued if the moving party demonstrates that the basis for the order falls into one of the categories listed in Rule 26(c): annoyance, oppression, or undue burden or expense.[85]  Although Defendant fails to specifically state the basis for which it seeks a protective order, the Court assumes it is the basis is undue burden.  Defendant fails to set forth specific facts showing an undue burden on Kennedy McKee beyond the fact that some of the documents sought from Kennedy McKee may be duplicative of documents to be produced by Defendant.  Without a significantly more detailed showing of the time and expense involved in responding to the subpoena, the Court will not issue a protective order barring this discovery.

## IV.    Conclusion

For the foregoing reasons, Plaintiff's motion to compel is granted in part and denied in part.  Defendant shall supplement its responses as directed in this Memorandum and Order within fourteen (14) days from the date of this order.  Defendant's motion to quash is granted in part insofar as the Court has modified the subpoena as stated above; its motion for a protective order is denied.  Each party shall bear its own attorney fees and costs incurred as a result of these

---

[84] *Aikens*, 217 F.R.D. at 534 (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, n.16 (1981)).

[85] *P.S. v. Farm, Inc.*, No. 07-2210-JWL, 2009 WL 483236, at *3 (D. Kan. Feb. 24, 2009); *see also Aikens v. Deluxe Fin. Svs., Inc.*, 217 F.R.D. 533, 534 (D. Kan. 2003) ("A party may obtain a protective order only if it demonstrates the basis for the protective order falls within one of the categories enumerated in Rule 26(c).  In other words, the protective order must be necessary to protect the party from 'annoyance, embarrassment, oppression, or undue burden or expense.'  Rule 26(c) does not provide for any type of order to protect a party from having to divulge privileged information or materials that are not calculated to lead to the discovery of admissible evidence.").

motions.[86]

Accordingly,

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel (ECF No. 32) is hereby granted in part and denied in part.  Defendant shall produce in native format all ESI responsive to Request Nos. 6, 7, 9, 15 and the specified Bates-stamp-numbered documents.  Defendant shall supplement its responses to Request Nos. 8 and 27; and Interrogatory Nos. 2, 5, and 6.  Defendant shall make its supplemental responses within fourteen (14) days from the date of this order.

**IT IS FURTHER ORDERED** that Defendant's Motion for Protective Order and to Quash Third-Party Subpoena (ECF No. 33) is granted in part and denied in part.  The Court has modified the subpoena as previously stated.

**IT IS SO ORDERED.**

Dated this 10th day of August, 2011, at Topeka, Kansas.

<u>s/ K. Gary Sebelius</u>
K. Gary Sebelius
U.S. Magistrate Judge

---

[86] Fed. R. Civ. P. 37(c)(1)(A) ("[T]he court, on motion and after giving an opportunity to be heard, *may* order payment of the reasonable expenses, including attorney's fees, caused by the failure.") (emphasis supplied).