IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

**EVELYN JEAN LINNEBUR,**   )
                            )
        Plaintiff,        )
                            )
  v.                        )   **Case No. 10-1379-RDR**
                            )
**UNITED TELEPHONE ASSOCIATION, INC.**,)
                            )
        Defendant.        )
_____

## MEMORANDUM AND ORDER

This is an action brought by the plaintiff against her former employer, United Telephone Association, Inc. (UTA), alleging age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., and the Kansas Age Discrimination in Employment Act (KADEA), K.S.A. 44-1111 et seq. This matter is presently before the court upon defendant's motion for summary judgment.

I.

The parties have alleged two very different factual scenarios. Plaintiff claims she was terminated from her position as Office Manager for UTA because of her age. She alleges that she held the position of Office Manager for 26 years at UTA and during that period (1) her work was regularly praised; (2) she was rewarded with performance-based pay increases; (3) she had a spotless record; and (4) she never received a poor performance review, disciplinary counseling or any other negative feedback about work performance. She further contends that on June 22, 2009, less than three weeks after her 62nd birthday, UTA General Manager Craig Mock told her that

she was old enough to draw Social Security and her company retirement, and he wanted her to retire. He said that she did not fit in his three- or five-year plan and that she had until September 1 to retire. When she resisted, plaintiff suggests that Mock began to manufacture reasons to push her out of the company and replace her with a 37 year-old employee he had been grooming to replace her.

UTA counters that it violated no law in terminating plaintiff. UTA acknowledges that Mock did not handle plaintiff's termination "ideally," but that he terminated her for a legitimate, non-discriminatory reason, i.e., deficiencies in her work performance. UTA asserts that Mock noticed that plaintiff's work performance had been deteriorating for two years. UTA notes that Mock tried to treat plaintiff with respect and keep the details of her termination between themselves. Mock even suggested UTA host a retirement party in plaintiff's honor so plaintiff could leave the company on good terms with no mention of her poor performance. UTA suggests that Mock's good intentions are now the basis of plaintiff's age discrimination claims.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a genuine

2

issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Essentially, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.  Id. at 251-52.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case.  See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial.  See Anderson, 477 U.S. at 256.  A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial.  Id.  Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  See id. The court must consider the record in the light most favorable to the nonmoving party.  See Bee v. Greaves, 744 F.2d 1387, 1396 (10th Cir. 1984), cert. denied, 469 U.S. 1214 (1985).  The court notes that summary judgment is not a "disfavored procedural shortcut;" rather,

3

it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." Celotex, 477 U.S. at 327 (quoting Fed.R.Civ.P. 1).

II.

Some comments are necessary before the court addresses the issues and arguments of the parties. This case has been grossly over-lawyered by counsel for both sides. This is a relatively simple ADEA case with one claim. Yet, it has produced lengthy briefs as well as a protracted discovery process. The fact that this case was filed in 2010 and the court is just now getting to a decision on the defendant's motion for summary judgment is testament to the excessive efforts by the attorneys in this case. The court will admit that no stone has been left unturned. This might be a sign of thoroughness, but it also might be an indication of overzealousness by counsel. Both sides have sought to strike various portions of the other party's memoranda. The court will attempt to address the pertinent issues raised by the parties, but with an understanding that the brevity of life prevents an examination of every matter argued by the parties.

The District of Kansas has imposed rules on the size of briefs that are allowed. See D.Kan.Rule 7.1(e)("The arguments and authorities section of briefs and memoranda must not exceed 30 pages absent a court order."). This court has always been reluctant to

impose those restrictions because it has been my belief that additional information usually can only further inform the court about the issues. This case, however, has tested that belief. In fact, it has obliterated it. The uncomplicated nature of the case was demonstrated by the fourteen page memorandum filed by the defendant in support of its motion for summary judgment. However, the ninety-nine page reply brief filed by the defendant provides adequate evidence why page limitations are necessary. The court has dealt with cases far more complex than this one, both factually and legally, and the parties have been able to provide the court with the necessary materials to make an informed decision in far fewer pages.

Plaintiff has filed a motion to strike defendant's reply memorandum and attached exhibits or, alternatively, for leave to file a sur-reply. In its reply, the defendant sought to strike various portions of plaintiff's response directed at its statement of uncontroverted facts.

The court shall initially deny plaintiff's motion to strike or, in the alternative, to file a sur-reply. The court shall also deny defendant's efforts to strike various portions of plaintiff's response to its motion for summary judgment. The court has carefully considered the arguments made by both sides. The court does not believe that any further discussion or any information on these

matters would be useful to the court or the parties. The court shall only consider evidence that it believes is properly before the court. The court will, however, consider the information properly before me in the light most favorable to the plaintiff.

III.

UTA was organized in 1951 by a number of farmers in the Ford County area who wanted telephone service in the rural area surrounding Dodge City. UTA started a telephone service when Southwestern Bell indicated no interest in providing service to the area. The company is located in Dodge City, Kansas.

Plaintiff began her employment with UTA in 1975. She was promoted to Office Manager in 1983. Craig Mock became the General Manager of UTA in January 1994. After Mock became the General Manager, plaintiff began reporting directly to him.

UTA promoted Jennifer Pachner to the position of "Controller" in 2007. As Controller, Pachner oversaw the Accounting Department. Nevertheless, plaintiff retained some control over the Accounting Department as Pachner reported to her.

In November 2005, UTA founded a subsidiary company, United Wireless, to provide cellular telephone services. In 2007 and 2008, Mock realized that, after founding United Wireless, wireless customers outnumbered telephone customers and cable customers combined. This caused a tremendous increase in the number of

customers who were coming in and out of the office, which in turn increased the total amount of work in the office. Mock decided that some changes were necessary including delegating the non-managerial payroll tasks to someone other than plaintiff and/or Pachner.

Several incidents occurred between 2007 and June of 2009 that Mock believed called plaintiff's capabilities as Office Manager into question. Areas of concern included (1) inappropriate conduct with an agent of United Wireless and a UTA employee; (2) the discovery of a $400,000 accounting error; and (3) the approval of commissions on insurance sales for the plaintiff's granddaughter. Nevertheless, during that same period, Mock at times praised plaintiff for her job performance and gave her substantial merit pay raises in 2007, 2008 and 2009. Plaintiff turned 62 on May 30, 2009. On June 22, 2009, Mock called plaintiff into his office with the intention of terminating her. The exact nature of that conversation is disputed, but at some point Mock mentioned that plaintiff could retire. He further indicated that UTA would host a retirement party for her.

Plaintiff later notified Mock by e-mail on June 22nd that she intended to take "FMLA leave" for two family emergencies. On August 19, 2009, plaintiff sent Mock a letter stating, in part, "it is my understanding . . .that I will be involuntarily terminated as soon as my paid vacation leave runs out. Please let me know if the above is no longer the case, or if there is any new information I need to

know about my employment status." Mock responded with a letter to plaintiff on August 28, 2013 that stated: "Your employment will terminate for cause when vacation hours are gone."

IV.

Kansas law and federal law prohibit discrimination on the basis of age in employment decisions. K.S.A. 44-1113; 29 U.S.C. § 623(a)(1). The analysis for claims of age discrimination brought under the KADEA is the same as that used for ADEA claims. Wallace v. Beech Aircraft Corp., 87 F.Supp.2d 1138, 1147 (D.Kan. 2000) (citing Elza v. Koch Indus., Inc., 16 F.Supp.2d 1334, 1340 (D.Kan. 1998)).

The ADEA requires "but-for" causation; therefore, a plaintiff claiming age discrimination must establish by a preponderance of the evidence that his employer would not have taken the challenged employment action but for the plaintiff's age. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177-78 (2009); see also Jones v. Okla. City Pub. Schs., 617 F.3d 1273, 1278 (10th Cir. 2010)("Gross does not disturb longstanding Tenth Circuit precedent by placing a heightened evidentiary requirement on ADEA plaintiffs to prove that age was the sole cause of the adverse employment action.").

A plaintiff may prove a violation of the ADEA either by direct evidence of discrimination, or by following the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

See Khalik v. United Air Lines, 671 F.3d 1188, 1192 (10th Cir. 2012).

The parties disagree on whether plaintiff has produced any direct evidence of discrimination. Plaintiff indicates that she has produced such evidence. She relies upon the following statement made by Mock just prior to her termination: "You're 62 years old, old enough to draw Social Security, and eligible to draw your company retirement. I want you to retire." The defendant argues that these statements, even though they deny Mock made them, do not constitute direct evidence of discrimination.

Direct evidence of discrimination occurs when either the decision-maker or an employee who influenced the decision-maker made discriminatory comments related to the employment action in question. See Reeves v. Sanderson Plumbing, 530 U.S. 133, 152 (2000). Direct evidence is evidence which if believed would prove the existence of a fact without any inferences or presumptions. Riggs v. AirTran Airways, Inc., 497 F.3d 1108, 1118 (10th Cir. 2007). As explained by the Tenth Circuit:

> Direct evidence of employment discrimination is "'usually impossible to obtain,'" and is generally limited to "'an admission by the decision-maker such as "I fired him because he was too old."'" [Twigg v. Hawker Beechcraft Corp., 659 F.3d 987, 1000 n. 8 (10th Cir.2011)](quoting Ostrowski v. Atl. Mut. Ins. Cos., 968 F.2d 171, 181 (2d Cir.1992)). "A statement that can plausibly be interpreted two different ways—one discriminatory and the other benign—does not directly reflect illegal animus, and, thus, does not constitute direct evidence." Hall [v. U.S. Dep't of Labor, 476 F.3d 847], 855 [(10th

9

Cir.2007)](quotation omitted).

Anderson v. Cato Corp., 444 Fed.Appx. 280, 283 (10th Cir. 2011).

The evidence proffered here does not meet the legal test so as to constitute direct evidence of age discrimination. The statements asserted by plaintiff can be interpreted in two different ways. These statements do not prove the existence of a fact without any inference or presumption. Thus, they do not constitute direct evidence of discrimination.

Without proof of direct evidence of discrimination, the court shall turn to the burden-shifting framework announced in McDonnell Douglas. Twigg, 659 F.3d at 998. Under this framework, a plaintiff must first establish a prima facie case of discrimination by showing (1) membership in a protected class and (2) an adverse employment action (3) that took place under circumstances giving rise to an inference of discrimination. E.E.O.C. v. PVNF, L.L.C., 487 F.3d 790, 800 (10th Cir. 2007). If a plaintiff can establish a prima facie case, the burden shifts to the employer to assert a legitimate nondiscriminatory reason for its actions. If it can do so, the burden shifts back to the plaintiff to introduce evidence that the stated nondiscriminatory reason is merely a pretext for discriminatory intent. Simmons v. Sykes Enters., 647 F.3d 943, 947 (10th Cir. 2011).

In order to make out a prima facie case of wrongful discharge under the ADEA, a plaintiff must show: (1) she is within the protected

10

age group; (2) was doing satisfactory work; (3) was discharged; and (4) was replaced by someone younger. See Rivera v. City & County of Denver, 365 F.3d 912, 920 (10th Cir. 2004). The burden at this stage is "'not onerous.'" Orr v. City of Albuquerque, 417 F.3d 1144, 1149 (10th Cir. 2005)(quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

The defendant disputes only the second element of the prima facie case. The defendant contends that plaintiff cannot establish a prima facie case because she cannot prove that she was doing satisfactory work at the time of her discharge. The defendant asserts that the facts show that plaintiff was not qualified to meet the changing needs of UTA. The defendant points out that plaintiff refused to delegate responsibility over payroll and refused to train June Scott to help in the payroll department.

The Tenth Circuit has "held that a defendant cannot defeat a plaintiff's prima facie case by articulating the reasons for the adverse employment action because the plaintiff in such a situation would be denied the opportunity to show that the reasons advanced by the defendant were pretextual." E.E.O.C. v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1193 (10th Cir. 2000)(citing MacDonald v. Eastern Wyoming Mental Health Center, 941 F.2d 1115, 1119-20 (10th Cir. 1991)). "[A] plaintiff is only required to raise an inference of discrimination, not dispel the nondiscriminatory reasons

11

subsequently proffered by the defendant." Orr, 417 F.3d at 1149. "A defendant's evidence regarding an employee's work performance should not be considered when determining whether the employee has made a prima facie case of employment discrimination." Ellison v. Sandia Nat'l. Laboratories, 60 Fed. Appx. 203, 205 (10th Cir.), cert. denied, 540 U.S. 880 (2003). "In analyzing Plaintiff's prima facie case, it is important not to conflate their claim of discrimination with Defendants' proffered explanation." Orr, 417 F.3d at 1149 (citation omitted). The Tenth Circuit has held in such circumstances:

> that a plaintiff may meet the second element of "a prima facie case of discrimination in a discharge case by credible evidence that she continued to possess the objective qualifications she held when she was hired, or by her own testimony that her work was satisfactory, even when disputed by her employer, or by evidence that she held her position for a significant period of time."

Bolton v. Sprint/United Management Co., 220 Fed. Appx. 761, 767 (10th Cir. 2007)(quoting MacDonald, 941 F.2d at 1121 (citations omitted)).

Based upon her prior work, plaintiff had the necessary qualifications for her position. Moreover, the evidence shows that plaintiff held her position for over twenty years. Plaintiff has presented evidence that during that period she received pay raises and praise for her work. Accordingly, the court finds that plaintiff has satisfied the second element of her prima face case. See Beaird v. Seagate Technology, Inc., 145 F.3d 1159, 1166 n. 3 (10th Cir.), cert. denied, 525 U.S. 1054 (1998).

The court next considers whether defendant has articulated a legitimate, non-discriminatory reason for termination. The defendant contends that plaintiff was fired due to poor performance. The defendant asserts that plaintiff (1) refused to delegate responsibility for non-managerial tasks, (2) became increasingly inappropriate in her interactions with customers and co-workers, (3) was responsible for a $400,000 accounting error, and (4) made improper commission payments to her granddaughter.

There is little dispute that poor performance is a legitimate, non-discriminatory reason for termination. See Bertsch v. Overstock.com, 684 F.3d 1023, 1029 (10th Cir. 2012)("Poor performance, to be sure, it the quintessential legitimate, nondiscriminatory reason for termination."). Given defendant's response, the court must proceed to determine if plaintiff can establish pretext.

A plaintiff can withstand summary judgment if she presents evidence sufficient to raise a genuine dispute of material fact regarding whether the defendant's articulated reason for the adverse employment action is pretextual. See Reeves, 530 U.S. 133 at 147-49. "Pretext exists when an employer does not honestly represent its reasons for terminating an employee." Miller v. Eby Realty Group LLC, 396 F.3d 1105, 1111 (10th Cir. 2005). "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for

its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Rivera, 365 F.3d at 925.(internal quotation marks and brackets omitted). "Pretext may also be shown by providing direct evidence discrediting the proffered rationale, or by showing that the plaintiff was treated differently from others similarly situated." Jaramillo v. Adams Cnty. Sch. Dist. 14, 680 F.3d 1267, 1269 (10th Cir. 2012). Mere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgment. Satterlee v. Allen Press, Inc., 443 F.Supp.2d 1236, 1245 (D.Kan. 2006). In examining whether defendant's proffered reason is pretextual, the court must "look at the facts as they appear to the person making the decision to terminate plaintiff." Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1231 (10th Cir. 2000). The court's role is not to second guess an employer's business judgment. Stover v. Martinez, 382 F.3d 1064, 1076 (10th Cir. 2004).

"Age-related comments referring directly to the worker may support an inference of age discrimination." Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 531 (10th Cir. 1994). To indirectly establish pretext through such statements, plaintiff must show some nexus between the discriminatory statements and the employment decision. Walker v. Faith Techs., Inc., 344 F.Supp.2d 1261, 1277 (D.Kan. 2004).

Plaintiff points to the following matters as evidence of pretext: (1) age-related comments made by Mock to her in conjunction with her termination; (2) other age-related comments made by Mock less than six months earlier; (3) Mock's failure to say anything to her about performance problems during the alleged two-year period of poor performance; (4) Mock's praise of her job performance and awards of performance-based pay raises; (5) Mock's failure to follow UTA's procedure and practice of using progressive discipline principles; (6) Mock's statement of false information to the KHRC that the UTA Board made the decision to discharge her; (7) Mock's failure to investigate plaintiff's performance deficiencies until after Mock had decided to fire her; (8) Mock's more favorable treatment of Pachner, a younger employee; and (9) UTA providing shifting and inconsistent reasons for her termination.

The court wants to focus initially on the statements made by Mock at the time of plaintiff's discharge. The court understands that Mock denies that such statements were made, but on summary judgment, the court must consider the evidence in the light most favorable to the plaintiff. The court is persuaded that these statements support an inference of age discrimination. These comments can be interpreted to show that Mock wanted plaintiff to retire due to her age and that he did not want to have to terminate her because she was too old and did not fit into company's plans. These statements

were made (1) by the decision-maker; (2) directly to plaintiff; and (3) at the time of plaintiff's discharge. As a result, these comments have both temporal and causal connections to Mock's decision to discharge plaintiff. They are without question circumstantial evidence of pretext for discrimination. See, e.g., Barnes v. Foot Locker Retail, Inc., 476 F.Supp.2d 1210, 1215 (D.Kan. 2007)(statements made by manager just prior to termination that "they wanted someone younger and more aggressive" was sufficient evidence to establish pretest in age discrimination case); Evans v. Sears Logistics Services, Inc., 2011 WL 6130885 at *11 (E.D.Cal. Dec. 8, 2011)(statements made by supervisor to plaintiff that he would not be around much longer because he was of retirement age and that Sears needed younger employees constituted circumstantial evidence of age discrimination). The statements made by Mock, of course, also may be interpreted to indicate that retirement was a more attractive option than a for-cause termination for performance issues. This is simply a matter for a jury to decide.

The statements made by Mock at the time of plaintiff's termination meeting are sufficient by themselves to create an issue of material fact concerning whether defendant's stated reason for plaintiff's termination was pretextual. Accordingly, the court need not consider whether the other facts cited by plaintiff would be sufficient to establish the necessary pretext. See Barnes, 476

F.Supp.2d at 1215; see also Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 433 (1st Cir. 2000)(explaining that "evidence of age-related comments can support an inference of pretext and discriminatory animus"); Owens v. New York City Housing Authority, 934 F.2d 405, 410 (2nd Cir. 1991)(evidence that employer made discriminatory comments is sufficient to overcome motion for summary judgment); Bonham v. Regions Mortgage, Inc., 129 F.Supp.2d 1315, 1332 (M.D.Ala. 2001)("[W]hether comments standing alone show pretext depends on whether the substance, context, and timing could permit a finding that the comments are causally related to the adverse employment action at issue."). The court will therefore deny defendant's motion for summary judgment on plaintiff's ADEA and KADEA claims.

V.

The defendant next contends, in the alternative, that it is entitled to partial summary judgment on plaintiff's claims for back pay and front pay because it would have fired plaintiff when it learned that she had improperly paid commissions to her granddaughter at the expense of and to the exclusion of other employees. The defendant relies upon McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352 (1995) for support.

Under McKennon, if an employer learns of employee wrongdoing after it has fired that employee, and it can prove that the "wrongdoing

17

was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge," the employee may not obtain front pay or reinstatement and in certain circumstances may also be denied back pay to which she would otherwise be entitled.  McKennon, 513 U.S. at 361-62.  According to the Supreme Court, it would not comport with the "employer's legitimate concerns" to ignore evidence of misconduct on the part of the employee. See id. at 361.

Plaintiff has argued in response that the defendant (1) cannot show that she engaged in misconduct regarding the commissions; (2) cannot establish that the alleged misconduct justified discharge; and (3) learned about the commissions prior to her termination and took no action to terminate her.

In applying McKennon, this court must use a two-step test. Perkins v. Silver Mountain Sports Club & Spa, LLC, 557 F.3d 1141, 1145 (10th Cir. 2009).  First, the employer must establish "that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge."  Id.(quoting McKennon, 513 U.S. at 362-63).  The employer must show that (1) it was unaware of the misconduct at the time it terminated the employee, (2) the misconduct was "serious enough to justify discharge," and (3) it would have actually discharged the employee had it known about the misconduct.

18

Ricky v. Mapco, Inc., 50 F.3d 874, 876 (10th Cir. 1995). "Second, and only after an employer has met this initial showing, the after-acquired evidence may then be considered to limit the damages remedy available to the wrongfully terminated employee." Perkins, 557 F.3d at 1145.

The court is persuaded that summary judgment is precluded on this matter because sufficient issues of fact remain in dispute. The court does not believe that the defendant has demonstrated that (1) it was unaware of the misconduct at the time plaintiff was terminated; and (2) that the misconduct was serious enough to justify discharge. Because a reasonable jury could conclude either that the defendant was aware of the misconduct in question or that the wrongdoing was not severe enough that the defendant in fact would have terminated plaintiff on that ground alone, summary judgment is denied on the defendant's after-acquired evidence defense.

**IT IS THEREFORE ORDERED** that plaintiff's motion to strike defendant's reply or for leave to file sur-reply (Doc. # 219) be hereby denied.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment (Doc. # 160) be hereby denied.

**IT IS SO ORDERED.**

Dated this 22nd day of July, 2013, at Topeka, Kansas.

                                              *s/Richard D. Rogers*
                                            United States District Judge